UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LENA C.

                                    Plaintiff,

          v.

COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.

CASE NO. C20-1461-MAT

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL

Plaintiff proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied Plaintiff's application for Supplemental Security Income (SSI) after a hearing before an administrative law judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, this matter is REVERSED and REMANDED for an award of benefits.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1972.[1] Plaintiff has limited education and previously worked as a fast-food worker and cashier. (AR 269, 294, 849.) Plaintiff protectively filed applications for

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER
PAGE - 1

Disability Insurance Benefits (DIB) and SSI[2] on December 27, 2010, alleging disability beginning June 30, 2006. (AR 243–58.) The applications were denied at the initial level and on reconsideration. On November 16, 2012, the ALJ held a hearing and took testimony from Plaintiff. (AR 51–91.) On March 11, 2013, the ALJ issued a decision finding Plaintiff not disabled. (AR 30–45.) Plaintiff timely appealed. The Appeals Council denied Plaintiff's request for review on August 8, 2014 (AR 8–14), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to the district court. By order dated January 12, 2016, the district court remanded the matter for further administrative proceedings finding that the ALJ erred by omitting lupus and chronic pain as severe impairments and failing to include these impairments in formulating Plaintiff's residual functional capacity (RFC). (AR 1009–22.)

On December 15, 2016, the ALJ held another hearing and took testimony from Plaintiff and a vocational expert (VE). (AR 898–944.) On April 17, 2017, the ALJ issued a decision finding Plaintiff not disabled. (AR 1035–51.) Plaintiff timely appealed. On December 18, 2018, the Appeals Council assumed jurisdiction of the case and remanded the case to the ALJ because the ALJ, contrary to the district court's order, found both lupus and chronic pain to be non-medically determinable impairments. (AR 1064.) The Appeals Council also found that the ALJ improperly evaluated the opinions of Daniel Greenan, DPM, and Michael Snyder, M.D. (AR 1065.) The Appeals Council, therefore, ordered the ALJ to give further consideration to treating, non-treating source, and non-medical source opinions; further evaluate Plaintiff's mental impairments in accordance with the special technique described in 20 C.F.R. §§ 404.1520a and 416.920a; further evaluate the nature and severity of Plaintiff's physical impairments, including lupus and chronic

---

[2] Plaintiff filed a subsequent claim for SSI on November 17, 2014, which claim the Appeals Council consolidated with the current matter. (AR 1025–26.)

ORDER
PAGE - 2

pain syndrome; give further consideration to Plaintiff's maximum RFC; obtain further evidence from a medical expert related to the nature and severity of Plaintiff's functional limitations; and, if warranted, obtain supplemental evidence from a vocational expert. (AR 1064–67.)

On May 19, 2020, the ALJ held a telephonic hearing and took testimony from Plaintiff, a vocational expert, and medical expert Dr. Allen David Dube. (AR 864–97.) On May 20, 2020, Plaintiff submitted a letter amending the alleged onset date to December 27, 2010. (AR 1311.) Because the amended onset date is after Plaintiff's date last insured of June 30, 2006, the ALJ dismissed Plaintiff's DIB claim. (AR 835–36.) On June 3, 2020, the ALJ issued a decision finding Plaintiff not disabled. (AR 835–51.) Plaintiff appeals this final decision of the Commissioner to this Court. 20 C.F.R. § 416.1484.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). "Substantial evidence" means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold the ALJ's decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining

whether a claimant is disabled. *See* 20 C.F.R. § 416.920 (2000).

At step one, the ALJ must determine whether the claimant is gainfully employed. The ALJ found Plaintiff had not engaged in substantial gainful activity since the amended alleged onset date. (AR 838.)

At step two, the ALJ must determine whether a claimant suffers from a severe impairment. The ALJ found Plaintiff has the following severe impairments: obesity; diabetes mellitus; degenerative disc disease of the thoracic and lumbar spine; polyarthritis; pes planus right foot; obstructive sleep apnea; chronic pain syndrome vs. undifferentiated connective tissue disorder vs. undifferentiated spondylarthritis; major depressive disorder; posttraumatic stress disorder (PTSD); personality disorder; and history of opiate dependence. (AR 838.) The ALJ found that the Plaintiff did not have the medically determinable impairments of lupus, fibromyalgia, chronic fatigue syndrome, and rheumatoid arthritis. (AR 838–39.) The ALJ also found that the record contained evidence of the following impairments, which do not rise to the level of severe: hypothyroidism, hypertension, vitamin D deficiency, cellulitis, plantar spurs, coronary artery disease, and trigger finger of the left thumb. (AR 839.)

At step three, the ALJ must determine whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Plaintiff's impairments did not meet or equal the criteria of a listed impairment. (AR 840–41.)

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found Plaintiff able to perform sedentary work, as defined in 20 C.F.R. § 416.967(a), with the following limitations:

ORDER
PAGE - 4

> The claimant can occasionally balance, stoop, kneel, and crouch. The claimant can never climb or crawl. The claimant should avoid concentrated exposure to vibrations and hazards.
>
> The claimant can perform simple, routine tasks that can be learned on the job in a short period, with no more than superficial interaction with coworkers and the general public.

(AR 841.) With that assessment, the ALJ found Plaintiff unable to perform her past relevant work. (AR 849.)

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of a VE, the ALJ found Plaintiff capable of performing other jobs, such as work as an assembler, bench hand; sewing machine operator; and ticket seller. (AR 849–50.)

Plaintiff argues that the ALJ erred by (1) failing to properly comply with the Appeals Council order by failing to obtain evidence from a medical expert as to the severity of Plaintiff's functional limitations; (2) improperly weighing the opinions of Plaintiff's treating and examining providers; and (3) assessing an RFC that is not supported by substantial evidence. Plaintiff requests remand for an award of benefits or, in the alternative, remand for further administrative proceedings. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

## 1. Order of the Appeals Council

Plaintiff argues that the ALJ failed to comply with the Appeals Council's December 18, 2018 order remanding the matter for further administrative proceedings. Specifically, Plaintiff argues that the ALJ failed to comply with the instruction to obtain evidence from a medical expert

ORDER
PAGE - 5

as to "the nature and severity of and functional limitations resulting from the claimant's impairments" (AR 1066) by failing to question the medical expert regarding the functional limitations resulting from Plaintiff's arthritis disorder. Pl Br. at 3–4.

The Court may review the ALJ's failure to comply with the Commissioner's own regulations for legal error applying a clearly erroneous standard. *See Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012), *superseded by regulation on other grounds*; *Pac. Gas & Elec. Co. v. F.E.R.C.*, 464 F.3d 861, 868 (9th Cir. 2006) ("[I]t is well established that an agency's interpretation of the intended effect of its own orders is controlling unless clearly erroneous." (internal quotation marks and citation omitted)). Here, the Appeals Council found, among other things, that the ALJ erred by failing to recognize lupus and chronic pain as severe impairments according to the district court's 2016 remand order, which established lupus and chronic pain to be medically determinable impairments. (AR 1064; AR 1009–22.) Accordingly, the Appeals Council instructed the ALJ to "[f]urther evaluate the nature and severity of the claimant's physical impairments, including lupus and chronic pain syndrome." (AR 1066.)

At the May 19, 2020 hearing, the ALJ interpreted the Appeals Council order as directing the ALJ to consider whether lupus or chronic pain are medically determinable in this case. (AR 881–82.) Given the Appeals Council's discussion of lupus and chronic pain, the ALJ reasonably complied with the Appeals Council's order by taking medical expert testimony regarding lupus and chronic pain. Indeed, the medical expert testified that Plaintiff's pain likely arises from a diagnosis of undifferentiated spondylarthritis. (AR 884–85.) Further, although the Appeals Council directed the ALJ to "obtain evidence from a medical expert related to the nature and severity of and functional limitations resulting from the claimant's impairments" (AR 1066), Plaintiff was represented at the hearing, had an opportunity to question the medical expert at the

hearing, and failed to raise an objection to the ALJ's line of questioning. Therefore, the Court finds that Plaintiff's failure to raise an objection at the administrative hearing waived this issue on appeal. *See Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999) ("[W]hen claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal.").

Finally, even if the ALJ did err by failing to question the medical expert regarding the functional limitations associated with Plaintiff's arthritis, this error would be harmless. *See Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (recognizing application of harmless error where a "mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion"). The ALJ found chronic pain, undifferentiated spondylarthritis, and polyarthritis to be severe impairments and assessed postural and environmental functional limitations considering Plaintiff's impairments. (AR 838.) Therefore, any error would be harmless because the ALJ accounted for functional limitations resulting from Plaintiff's chronic pain and arthritis impairments.

**2. Medical Opinions**

The regulations applicable to Plaintiff's case require the ALJ to weigh medical opinions regardless of the source. 20 C.F.R. § 416.927(c). Under these regulations, the ALJ is required to give "controlling weight" to a treating physician's opinion if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [claimant's] case record."[3] *Id.* § 416.927(c)(2). More weight should be

---

[3] In 2017, the Social Security Administration amended its regulations and removed the "controlling weight" requirement for all applications filed after March 27, 2017. *See* 20 C.F.R. §§ 404.1520c, 416.920c (2017). Because Plaintiff's claim was filed before March 27, 2017, the new rules are not applicable to Plaintiff's case.

given to the opinion of a treating doctor than to a non-treating doctor, and more weight should be given to the opinion of an examining doctor than to a non-examining doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Where not contradicted by another doctor, a treating or examining doctor's opinion may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). Where contradicted, a treating or examining doctor's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Lester*, 81 F.3d at 830–31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

With these regulations and considerations in mind, the Court proceeds to its analysis of the medical evidence in this case.

A.   Dr. Jennifer Jolley, M.D.

Dr. Jolley, Plaintiff's treating physician, completed a physical functional evaluation for Plaintiff dated August 6, 2012. (AR 706–08.) Dr. Jolley limited Plaintiff to sedentary work and opined that Plaintiff was unable to lift more than 10 pounds and could not stand for more than 30 minutes or sit for more than 15 minutes. (AR 707–08.) Dr. Jolley opined that Plaintiff's lupus, chronic pain, chronic hypertension, gestational diabetes, migraine headaches, and obesity caused marked limitations in Plaintiff's ability to perform basic work activities, including sitting, standing, walking, lifting, and, in regard to migraine headaches, communicating. (AR 707.)

In deciding the weight to give to any medical opinion, the ALJ considers factors such as the examining relationship, the treatment relationship, supportability, consistency, specialization, and other factors which tend to support or contradict the opinion, including the source's understanding of the agency's disability program and evidentiary requirements and the source's familiarity with the case record. 20 C.F.R. § 416.927(c). The ALJ gave partial weight to Dr.

Jolley's opinion. (AR 845.) The ALJ found that Dr. Jolley's opinion that Plaintiff could perform sedentary work was consistent with the evidence; however, the ALJ afforded no weight to the additional limitations opined by Dr. Jolley, finding that the doctor saw Plaintiff in the context of her pregnancy and that the doctor's assessment of sitting restrictions was inconsistent with the Plaintiff's ability to sit on a plane to and from Mexico from 2014 through 2016, which activity required prolonged sitting. (AR 845.)

Plaintiff argues that the ALJ erred by failing to give full weight to Dr. Jolley's opinion. "While the opinion of a treating physician is not binding, it is entitled to special weight." *Baxter*, 923 F.2d at 1396. Accordingly, "[t]he ALJ may not reject the opinion of a treating physician, even if it is contradicted, without providing 'specific and legitimate reasons' supported by substantial evidence." *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). Here, the ALJ disregarded Plaintiff's sitting and standing limitations, finding that Dr. Jolley was examining Plaintiff in the context of her pregnancy. (AR 845.) However, Dr. Jolley's opinion states that she assessed marked limitations regarding basic work activities, including siting and standing, based on diagnoses unrelated to Plaintiff's pregnancy, including lupus, chronic pain, chronic hypertension, migraine headaches, and obesity. (AR 707.) Therefore, the ALJ's reasoning was neither specific, legitimate, nor supported by substantial evidence.

The ALJ further disregarded Dr. Jolley's assessment of sitting limitations based on evidence of Plaintiff traveling to Mexico between 2014 and 2016. An ALJ may reject an opinion when the physician sets restrictions that "appear to be inconsistent with the level of activity that [the claimant] engaged in." *Rollins*, 261 F.3d at 856. Here, however, Plaintiff's ability to travel to Mexico on occasion to visit family was not reasonably inconsistent with Dr. Jolley's assessment that Plaintiff was unable to sit more than 15 minutes in the workplace. *See Fair v. Bowen*, 885

F.2d 597, 603 (9th Cir. 1989) ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits . . . ."); *Howard v. Heckler*, 782 F.2d 1484, 1488 (9th Cir. 1986) (declining to find claimant's "claim of disability gainsaid by his capacity to engage in periodic restricted travel"). Further, there is no evidence that Plaintiff remained seated for the duration of the flight or whether she stood up or reclined at intervals to sufficiently counter Dr. Jolley's opinion. *See Tackett v. Apfel*, 180 F.3d 1094, 1103 (9th Cir. 1999) (ability to travel by car long distance not inconsistent with physician's assessment of sitting limitations when there was no evidence of the frequency or duration of rest stops, or whether claimant rode sitting up, reclining, or lying down). Therefore, the ALJ's reasoning for rejecting Dr. Jolley's sitting limitations was neither specific, legitimate, nor supported by substantial evidence.

For these reasons, the ALJ erred by assigning partial weight to Dr. Jolley's opinion and rejecting the doctor's assessment of sitting limitations. This error was harmful because it resulted in an RFC assessment that did not account for all of Plaintiff's assessed limitations. Specifically, the ALJ failed to include in the RFC Dr. Jolley's assessed limitations that Plaintiff could not stand for more than 30 minutes or sit for more than 15 minutes.

B.  Dr. Daniel Greenan, DPM.

On September 28, 2016, Dr. Greenan, Plaintiff's treating podiatrist, provided an assessment of Plaintiff's ability to perform work-related activities. (AR 1923–26.) Dr. Greenan diagnosed Plaintiff with talon-navicular joint arthritis, pes planus, and obesity. (AR 1923.) Based on these conditions, Dr. Greenan opined that Plaintiff could perform sedentary work and assessed the following limitations: Plaintiff could stand and walk for less than 2 hours in an 8-hour day; was limited in pushing and pulling in the lower extremities due to painful arthritis; could never climb, balance, or crouch; and could occasionally stoop, kneel, and crawl. (AR 1923–25.)

The ALJ gave partial weight to Dr. Greenan's opinion, finding that the doctor's assessment that Plaintiff could perform sedentary work was consistent with the overall evidence. (AR 845.) The ALJ, however, rejected Dr. Greenan's assessment of stand/walk restrictions and other non-exertional restrictions to the extent that they were inconsistent with the RFC on grounds that the doctor saw Plaintiff only once in August 2016, his stand/walk limitations were inconsistent with the contemporaneous treatment notes in July and August 2016, which showed an unrestricted gait, and other treatment notes that showed Plaintiff had a slowed, but non-antalgic gait. (AR 845.) The ALJ further rejected Dr. Greenan's other non-exertional limitations on grounds that they were "not fully consistent with longitudinal examination findings frequently demonstrating intact motor and sensory function in the extremities, with no signs of edema." (AR 845.)

Plaintiff argues that the ALJ erred by relying on medical evidence that was irrelevant to Dr. Greenan's opinion in rejecting Dr. Greenan's assessment of stand/walk limitations and other non-exertional limitations. The ALJ properly rejects an opinion that is inconsistent with the record. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Here, however, the ALJ did not reasonably find Dr. Greenan's assessed limitations inconsistent with the medical record. The ALJ cites to treatment notes evidencing that Plaintiff had an unrestricted or non-antalgic gait (AR 845); however, Dr. Greenan based his assessed stand/walk limitations on his diagnoses of talon-navicular joint arthritis, pes planus, and obesity (AR 1923–26), and not on findings regarding Plaintiff's gait. Therefore, the ALJ did not reasonably find Dr. Greenan's assessment of stand/walk limitations inconsistent with evidence of Plaintiff's gait. Further, the ALJ sets out no conflicting evidence for rejecting Dr. Greenan's other non-exertional limitations. *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (the ALJ may reject physicians' opinions "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation

thereof, and making findings"). Accordingly, the ALJ did not provide an adequate rationale for rejecting Dr. Greenan's remaining non-exertional limitations.

For these reasons, the ALJ erred by assigning partial weight to Dr. Greenan's assessment of stand/walk limitations and other non-exertional limitations. This error was harmful because it resulted in an RFC assessment that did not account for all of Plaintiff's assessed limitations. Specifically, the ALJ failed to include in the RFC Dr. Greenan's assessed limitations that Plaintiff could stand and walk for less than 2 hours in an 8-hour workday and could never balance or crouch.

C.  Bella Arshinova, PA-C

On August 22, 2012, PA-C Arshinova provided a physical functional evaluation for Plaintiff and opined that Plaintiff was severely limited and unable to meet the demands of sedentary work. (AR 1929.) PA-C Arshinova assessed that Plaintiff's lupus and chronic pain syndrome caused severe limitations in Plaintiff's ability to stand, walk, lift, carry, handle, push, pull, reach, stoop, and crouch. (AR 1928.) Based on Plaintiff's diagnosis of diabetes, PA-C Arshinova assessed Plaintiff with marked limitations in her ability to stand and walk. (AR 1928.) PA-C Arshinova also assessed severe limitations based on Plaintiff's depression and chronic fatigue syndrome and moderate limitations based on Plaintiff's hypothyroidism but did not clearly identify specific affected work activities. (AR 1928.) On August 19, 2014, PA-C Arshinova completed another disability condition report and opined that Plaintiff was severely limited in lifting and carrying, described as the inability to lift at least 2 pounds or to stand or walk. (AR 1491–93.) Based on Plaintiff's diagnoses of lupus, rheumatoid arthritis, diabetes, hypertension, depression, and hypothyroidism, PA-C Arshinova opined that Plaintiff was unable to bend over, reach above, concentrate for extended periods of time, make repetitive motions, or tolerate exposure to chemicals, syntenic materials. (AR 1491.)

ORDER
PAGE - 12

Social security regulations applicable to Plaintiff claims distinguish between opinions coming from "acceptable medical sources" and "other sources." *Gomez v. Chater*, 74 F.3d 967, 970–71 (9th Cir. 1996). The regulatory definition of "acceptable medical sources" includes physicians and licensed psychologists but not nurse practitioners or physician assistants.[4] 20 C.F.R. § 416.902 (2011). Only an "acceptable medical source" may be considered a "treating source." SSR 06-03p (2006). The Commissioner considers opinions from other sources using the same factors used for acceptable medical sources. 20 C.F.R. § 416.927(f). The ALJ gave little weight to the opinions of PA-C Arshinova on grounds that the source relied, in part, on diagnoses of chronic fatigue syndrome, lupus, and rheumatoid arthritis, which conditions the ALJ found are not medically determinable. (AR 846.) The ALJ further found PA-C Arshinova's opinions were brief, conclusory, and inadequately supported by the medical findings, were inconsistent with Plaintiff's overall examination findings, were inconsistent with Plaintiff's activities, and relied, in part, on Plaintiff's self-reported pain, symptoms, and limitations, which reports the ALJ discounted. (AR 846.)

Plaintiff argues that the ALJ improperly rejected PA-C Arshinova's opinions. An ALJ may reject the opinion or testimony of a source who is not an "acceptable medical source" for "reasons germane to each witness for doing so." *Molina*, 674 F.3d at 1111. Here, the ALJ gave several germane reasons for discounting PA-C Arshinova's opinions. First, the ALJ reasonably found that PA-C Arshinova's findings were inadequately supported. PA-C Arshinova failed to identify any objective examination findings or diagnostic test results, on which PA-C Arshinova relied. *See* 20

---

[4] In 2017, the Social Security Administration amended its regulations and, among other things, included physician assistants and nurses in the definition of "acceptable medical source" for claims filed after March 27, 2017. *See* 20 C.F.R. § 416.902(a) (2017). Because Plaintiff's claims were filed before March 27, 2017, the new definitions are not applicable to Plaintiff's case.

C.F.R. § 416.927(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly signs and laboratory findings, the more weight we will give that medical opinion."). Plaintiff cites to several treatment notes that Plaintiff argues support PA-C Arshinova's opinions; however, the existence of an alternative interpretation of the evidence does not show that the ALJ erred. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("When evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

Second, the ALJ reasonably inferred that PA-C Arshinova's opinion relied on Plaintiff's subjective complaints in assessing Plaintiff's limitations. PA-C Arshinova noted in her 2012 opinion that Plaintiff complained of multiple joint pain, depression, chronic fatigue, diabetes, hypertension, and hypothyroidism and, as described above, the source did not identify independent or objective medical findings to support her opinions. (AR 1927.) Because the ALJ discounted Plaintiff's subjective testimony (AR 841–44) and Plaintiff does not challenge the ALJ's credibility finding, the ALJ reasonably rejected PA-C Arshinova's opinions on grounds that they were based on Plaintiff's self-reports, which the ALJ properly discounted. *See Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (a medical opinion "'premised to a large extent upon the claimant's own accounts of his symptoms and limitations' may be disregarded where those complaints have been 'properly discounted'" (citation omitted)).

Finally, the ALJ found that PA-C Arshinova's opinion conflicted with Plaintiff's overall examination findings. (AR 846.) Under the applicable regulations, the opinions of treating sources are generally entitled to controlling weight, *Lester*, 81 F.3d at 830, and the regulations "permit[] the Commissioner to accord opinions from other sources less weight than opinions from acceptable medical sources." *Gomez*, 74 F.3d at 970–71. Although the ALJ did not cite to specific opinions,

the ALJ expressly states that he accorded greater weight to the opinions of the acceptable medical sources "whose opinions are more reflective of the overall evidence." (AR 846–47.) *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) ("[A]lthough we will not fault the agency merely for explaining its decision with 'less than ideal clarity,' we still demand that the agency set forth the reasoning behind its decisions in a way that allows for meaningful review."). The ALJ thus reasonably rejected the opinions of PA-C Arshinova in favor of according greater weight to the opinions of the acceptable medical sources.

Plaintiff also assigns error to the ALJ's rejection of PA-C Arshinova's opinions on grounds that the source relied, in part, on diagnoses that were found to be not medically determinable and that the opinions were inconsistent with Plaintiff's activities. However, because the ALJ gave several germane reasons for rejecting the opinion of PA-C Arshinova as described herein and substantial evidence supports the ALJ's determination, any error in the ALJ's remaining reasons for rejecting PA-C Arshinova's opinions would be harmless. *See Stout*, 454 F.3d at 1055 (harmless where a "mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion"). Therefore, the Court need not reach the merits of Plaintiff's remaining assignments of error regarding the ALJ's evaluation of PA-C Arshinova's opinions.

D. Dr. Kathleen Andersen, M.D and Dr. Michael Snyder, M.D.

On June 30, 2014, Dr. Andersen, a state consultative examiner, completed a mental status examination for Plaintiff. (AR 1798–1803.) Dr. Andersen diagnosed Plaintiff with major depressive disorder, a history of panic attacks, a history of opiate pain medication abuse, and dependent personality features. (AR 1802.) Dr. Andersen opined that Plaintiff would have marked difficulty persisting at tasks to completion, be avoidant of tasks/activities at work that she perceived as being challenging to her, likely be immature or inappropriate in problem solving in

1    the workplace, probably rely on others to resolve problems, and have a reduced stress tolerance.

2    (AR 1802–03.) On December 2, 2016, Dr. Snyder, Plaintiff's treating psychiatrist, wrote a letter,

3    in which the doctor opined that Plaintiff had marked limitations in the ability to carry out

4    instructions on a consistent basis, maintain attention and concentration for extended periods,

5    maintain regular attendance and tolerate the stress of a typical work environment, interact

6    appropriately with the general public and co-workers, accept instructions and respond

7    appropriately to supervisors, and maintain socially appropriate behavior. (AR 1921–22.)

8        The ALJ gave little weight to the opinions of Drs. Andersen and Snyder, finding that the

9    opinions were inconsistent with the longitudinal evidence, inconsistent with Plaintiff's relatively

10   benign presentation during appointments, inconsistent with Plaintiff's activities, relied, in part, on

11   Plaintiff's self-reported symptoms and limitations, which the ALJ discounted, and, in regard to Dr.

12   Andersen's opinion, was inconsistent with the doctor's objective findings.

13       Plaintiff argues that the ALJ erred in evaluating Drs. Andersen and Snyder's opinions.

14   "The ALJ may not reject the opinion of a treating physician, even if it is contradicted, without

15   providing 'specific and legitimate reasons' supported by substantial evidence." *Rollins*, 261 F.3d

16   at 856. Here, the ALJ failed to provide specific and legitimate reasons to discount these opinions.

17   First, the ALJ found that the doctors' opinions were inconsistent with evidence indicating that

18   Plaintiff's mental health symptoms are largely situational; however, both Dr. Andersen and Dr.

19   Snyder diagnosed Plaintiff with major depressive disorder—indeed, the ALJ found at step two that

20   Plaintiff has the severe impairment of major depressive order. The ALJ further failed to cite

21   specific evidence in the record to support his alternative interpretation of the evidence. *See*

22   *Reddick*, 157 F.3d at 725 (the ALJ may reject physicians' opinions "by setting out a detailed and

23   thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof,

ORDER
PAGE - 16

and making findings"). Therefore, the ALJ's rejection of Drs. Andersen and Snyder's opinions based on a finding that Plaintiff's mental health symptoms are situational is not supported by substantial evidence.

Second, the ALJ cited several treatment notes in the record, in which Plaintiff was observed to be well appearing and in no distress, to be cooperative and pleasant, and to have appropriate mood and affect, with full alertness, orientation, logical thought processes, normal thought content, intact concentration, and normal memory. (AR 848.) However, the ALJ failed to explain how these records are reasonably inconsistent with either Dr. Andersen or Dr. Snyder's opinion. Indeed, Dr Andersen assessed that Plaintiff would have difficulty performing various work-related tasks on account of her low energy, lack of motivation, and passivity. (AR 1082.) Similarly, Dr. Snyder assessed that Plaintiff would be unable to maintain employment due to mental illness, which causes Plaintiff to "become[] easily stressed and overwhelmed by minor incidences or changes to her routine," among other things. (AR 1921.) The doctors' findings are not reasonably inconsistent with the observations cited by the ALJ. Therefore, the ALJ's rejection of Drs. Andersen and Snyder's opinions based on inconsistencies with the medical evidence is not supported by substantial evidence.

Next, the ALJ discounted Drs. Andersen and Snyder's opinions on grounds that they were inconsistent with evidence that Plaintiff was able to tolerate tasks that were more simple and routine in nature, noting that Plaintiff was able to travel independently to Mexico and care for her children. (AR 848.) The ALJ, however, fails to show how this evidence is reasonably inconsistent with either Dr. Andersen or Dr. Snyder's assessed limitations. Dr. Andersen assessed that Plaintiff "would likely be able to understand simple, straightforward instructions." (AR 1083.) Additionally, both doctors specifically assessed Plaintiff's ability to complete basic work-related

1    tasks in a work setting—indeed, Dr. Snyder opined that Plaintiff's "deep depression prevents her

2    from keeping appointments, leaving her home, and making good decisions" and that "the stress

3    involved with even a simple job would likely lead her to decompensate." (AR 1921–22.) Plaintiff's

4    ability to care for her children and travel to Mexico on occasion to visit family are not clearly

5    transferable to a work setting. *See Fair*, 885 F.2d at 603 ("[M]any home activities are not easily

6    transferable to what may be the more grueling environment of the workplace, where it might be

7    impossible to periodically rest or take medication."). Therefore, the ALJ's rejection of Drs.

8    Andersen and Snyder's opinions on grounds that they were inconsistent with the ALJ's conclusion

9    that Plaintiff would be able to tolerate simple and routine tasks was not supported by substantial

10   evidence.

11        The ALJ further discounted Drs. Andersen and Snyder's opinions on grounds that the

12   doctors relied, in part, on Plaintiff's self-reported symptoms and limitations. Although an ALJ may

13   reject a physician's opinion where it is based on a claimant's self-reports where those reports are

14   properly discredited, *see Morgan*, 169 F.3d at 602, such is not the case here. Dr. Andersen

15   evaluated Plaintiff during the mental status examination and made several objective observations

16   regarding Plaintiff's manner, thought process, speech, and affect, among other things, and also

17   conducted clinical tests, including serial 7s, serial 3s, recall, and judgment. (AR 1801–02.)

18   Dr. Snyder, Plaintiff's treating psychiatrist, did not refer to any self-reports in his opinion, and the

19   ALJ did not cite any evidence that the doctor relied more heavily on Plaintiff's self-reports than

20   on the doctor's own clinical observations and treatment history with Plaintiff. *See Ghanim v.*

21   *Colvin*, 763 F.3d 1154, 1162–63 (9th Cir. 2014) ("[W]hen an opinion is not more heavily based

22   on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting

23   the opinion.") Therefore, the ALJ's rejection of Drs. Andersen and Snyder's opinions on grounds

that they relied on Plaintiff's self-report is not supported by substantial evidence.

Finally, the ALJ rejected Dr. Andersen's opinion on grounds that it was inconsistent with Plaintiff's behavior during the examination, including Plaintiff's ability to attend the interview for 50 minutes, provide logically organized responses, and only transiently was on the verge of tears. (AR 848.) The ALJ's findings, however, are not supported by the evidence. Dr. Andersen assessed Plaintiff's limitations in her ability to perform basic work activities in a work setting. Accordingly, Plaintiff's ability to perform certain activities during a 50-minute mental health evaluation does not clearly undermine Dr. Andersen's assessed limitations. *See Fair*, 885 F.2d at 603 ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits . . . ."). Therefore, the ALJ's rejection of Dr. Andersen's opinion on grounds that it was inconsistent with the doctor's own objective findings is not supported by substantial evidence.

For these reasons, the ALJ erred by assigning little weight to Drs. Andersen and Snyder's opinions. This error was harmful because is resulted in an RFC that did not account for all of Plaintiff's assessed limitations. Although the RFC limited Plaintiff to "perform[ing] simple, routine tasks that can be learned on the job in a short period, with no more than superficial interaction with coworkers and the general public" (AR 841), Dr. Andersen opined that Plaintiff would have reduced stress tolerance (AR 1803). Dr. Snyder similarly opined that Plaintiff would have marked limitations in her ability to "tolerate the stress of a typical work environment" and also would have marked limitations in her ability to carry out instructions on a consistent basis, maintain attention and concentration for extended periods, maintain regular attendance, interact appropriately with the general public and coworkers, accept instructions and respond appropriately to supervisors, and maintain socially appropriate behavior. (AR 1921.) The RFC failed to account for these assessed limitations.

### 3.   RFC

At step four, the ALJ must identify the claimant's functional limitations or restrictions and assess her work-related abilities on a function-by-function basis. *See* 20 C.F.R. § 404.1545; SSR 96-8p. The RFC is the most a claimant can do considering his limitations or restrictions, and the ALJ must consider the limiting effects of all of the claimant's impairments, including those that are not severe, in assessing the RFC. 20 C.F.R. § 404.1545(e); SSR 96-8p. Plaintiff argues that the RFC is not supported by substantial evidence because the ALJ failed to accord proper weight to the examining and treating opinions in the record. Plaintiff argues that the limitations assessed by the improperly rejected opinions include the inability to perform sedentary work.

As described in detail above, the ALJ failed to provide legally sufficient reasons for rejecting the opinions of Drs. Jolley, Greenan, Andersen, and Snyder. The improperly rejected medical opinions assessed the following limitations that were not accounted for in the RFC: Plaintiff cannot stand for more than 30 minutes or sit for more than 15 minutes; can stand and walk for less than 2 hours in an 8-hour workday; can never balance or crouch; has reduced stress tolerance; cannot carry out instructions on a consistent basis; cannot maintain attention and concentration for extended periods; cannot maintain regular attendance and tolerate the stress of a typical work environment; cannot interact appropriately with the general public and coworkers; cannot accept instructions and respond appropriately to supervisors; and cannot maintain socially appropriate behavior.

At the May 2020 hearing, the VE testified that one absence per month up to a maximum of eight absences per year would be allowed in unskilled and semi-skilled employment. (AR 895.) The VE also testified that an individual who is off-task or who requires extra breaks for 10 percent or more of the day would not be retained in unskilled or semi-skilled competitive gainful

employment. (AR 849–50; AR 896.) Based on the VE's testimony, Plaintiff's inability to carry out instructions on a consistent basis, her reduced stress tolerance, and her attention, concentration, and attendance limitations described above would preclude her from performing the jobs identified by the VE or any unskilled and semi-skilled employment. Additionally, Plaintiff's inability to interact appropriately with the general public or maintain socially appropriate behavior would preclude her from performing the job of ticket seller, which requires superficial contact with the public. (AR 850; AR 894–95.) Finally, Plaintiff's inability to sit for more than 15 minutes would make her unable to perform sedentary work. *See* 20 C.F.R. § 404.1567(a).

The Court may remand for an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002). Such a circumstance arises when (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence. *Id.* Each of these criteria must be satisfied in order for the Court to remand for an award of benefits. *See Garrison v. Colvin*, 759 F.3d 995, 1023 (9th Cir. 2014).

The Commissioner has held three administrative hearings on this matter, during which the ALJ took testimony from Plaintiff, vocational experts, and a medical expert. Therefore, the Court concludes that the record in this matter has been fully developed and remand for further proceedings would serve no useful purpose. Therefore, this matter is reversed and remanded for an award of benefits.

//

//

ORDER
PAGE - 21

## <u>**CONCLUSION**</u>

For the reasons set forth above, this matter is REVERSED and REMANDED for an award of benefits.

DATED this 12th day of October, 2021.

MARY ALICE THEILER
United States Magistrate Judge

ORDER
PAGE - 22